May it please the court, Christy Hughes from Federal Defenders on behalf of Mr. Holley. The prosecutor committed misconduct when he told the jury during closing that Mr. Holley's bad decision had cost two lives and that the jury's job was to make sure that Mr. Holley did not get the shotgun back. This argument improperly appealed to the jury's fears about gun violence. It was completely irrelevant to elements of the false statement charge and implied that an acquittal would result in future violence. Could I ask you one question on this? You started at an important point. Yes. As I read the record, the jury heard evidence that the gun was used in a murder and suicide. Is that right? Correct. And was there any objection to that evidence coming in? No. Both parties actually talked about the factual background of how the gun was used. Excuse me. What was improper about this argument by the prosecutor referencing the fact that Mr. Holley's bad decision had cost two lives, it implies that Mr. Holley was somehow guilty or involved or, you know, implicated in the murder-suicide. And what this Court said in Weatherspoon, which was a felon in possession case, the fact there in Weatherspoon that the defendant was a convicted felon, both parties agreed to that. That wasn't an issue in the case. But it was improper to emphasize that fact in a way that painted the defendant as a bad man. And it's the same thing here. Neither party, you know, shied away from the fact that this was a murder-suicide. But that was irrelevant to the false statement charge, and Mr. Holley had nothing to do with that. And so for the prosecutor to say that his decision had cost those two lives and then to make the jury fearful that something bad would happen in the future if Mr. Holley got the shotgun back when he had no involvement in it, that's what was improper about it. It wasn't just the reference of the murder-suicide. Well, he did give the gun to somebody who committed a murder. So... He did, but both parties agreed that he didn't know what Donnell Roberts was going to do with the gun. He had no knowledge of what was going to go on. And so, yes, he had lied on that form, if we believe the government's evidence. And he shouldn't have given the gun to him, but he had absolutely nothing to do with that murder-suicide. Did the defense counsel make an objection when that statement was made? No. There was no objection. And so we are on plain error on this issue. But combined with the rest of the prosecutorial misconduct, which went to Mr. Holley's credibility, which was really the only issue in this case, the misconduct affected the jury's ability to fairly consider the totality of the evidence and deprive Mr. Holley of the fair trial. Was it really the prosecutor who was responsible for Detective Palmer's statements, or was that something that just Detective Palmer kind of came out with? Well, if Your Honors look at the pattern that this prosecutor had in eliciting testimony from law enforcement agents about their ability to tell when someone is lying during interrogation, this prosecutor had elicited very similar testimony over the previous two trials. And when Your Honors look at that pattern and then look at this question and answer with Detective Palmer, it appears that these agents were spring-loaded to answer these questions this way. They were prepared to comment on Holley's truth. And this had come up in the previous two trials. The prosecutor had been warned to stay away from this. Previous two missed trials. Missed trials, correct. And so this prosecutor was certainly on notice. And I think that when you look at the pattern as a whole, it does appear that they were prepared to testify this way. And is that information about the previous trials in the record before us? Yes, it is, Your Honor. I submitted a supplemental excerpt of record where I detailed what had occurred at the previous two trials. So they said the same thing. And was it objected to at the time? Yes. There were objections. Hold on. Let me get the correct excerpt out of all of these. So on the first trial, Agent Palmer didn't testify before, so we don't have his question and answers. But the first trial, the agent is asking, they're slightly different questions. They're not quite on the demeanor when he's testifying, but he's going through what's your training in conducting interviews. And different agents are automatically saying, oh, we're trained to detect if someone's lying or not. And those were objected to. The court sustained an objection at the first trial. It was objected to on the second agent at the first trial. The court said, I think that's a jury issue, but I'm going to let it in for this. That was Agent Detenio. The second trial, Agent Beals is testifying. The prosecutor again asks the question about your training regarding interviews. Agent Beals talks about, my respect with my training with respect to interviews was how to determine when someone was telling the truth. There's an objection, and the judge instructs the prosecutor again, this is not the agent's right to talk about this. It's the jury's determination. Again, during the second trial, Agent Beals made a similar statement. But if they were different witnesses, can it fairly be said that the government elicited this, A, and didn't the judge admonish the prosecutor and in effect the jury saying that's the jury's, you know, the jury's to decide the credibility, not the witness? Do you mean the admonishment after this particular instance in the third trial? Yeah, I'm sorry. I just gave you a bad question. That's okay. Well, turning to that admonishment, the judge never tells the jury to disregard that testimony, even though defense counsel asked for it. The judge never tells the jury it's absolutely your own, that's your role to determine truth or untruth, and you should completely do that independently of what Agent Palmer has testified. But I think that if you look at what the court said, it's ambiguous, and I don't think any interpretation helps the government here. The judge says, wait a minute, I want to get this straight. It's unfortunate, but it's not the witness's position to say if a statement is truthful or untruthful. So one reading is it's unfortunate that the prosecutor keeps eliciting this testimony about truth, which makes it seem that this is intentional and a pattern, or the judge is saying, well, it's unfortunate that the witness can't tell you if a statement is truthful or not. And if the jury interprets it that way, that's in no way a curative instruction. In the judge's closing instructions, did the judge tell the jury they were the finders of fact and had to determine credibility? The judge did give the general instruction that they need to consider all the evidence separately, but we know from Weatherspoon and that a curative instruction or a general instruction that comes that late is insufficient to cure the harm. It has to be given directly after the harm occurs, and it has to be specific to that misconduct. And so I believe it's Sanchez where this Court said a general instruction about you need to consider the evidence and you need to ignore – I guess actually Sanchez is about the prosecutors. Yeah. Counsel, if I could ask a question, just to clarify this in my mind. So are you saying that the instruction the judge gave after the law enforcement witness said that Holly wasn't truthful more or less said it's unfortunate but that's for the jury to decide? That could mean it's unfortunate that the law doesn't let the officer testify? Yes, that's what I was arguing, is that it's ambiguous. It's not clear what the judge means by it's unfortunate. He says it's not the witness's position to say if a statement is truthful or untruthful. And so I think by putting it's unfortunate at the beginning, the judge suggests it's unfortunate because Detective Palmer's testimony may actually be relevant or may actually be helpful for you, but unfortunately he can't testify about that. I don't know if Judge Gould is finished, but I – I just started to read the transcript here. I think I understand it now. But I think maybe we're looking at different parts. It's at ER 14, if that helps. On 17, I believe he says, Your witness should know they can't offer their opinion as to the truth of somebody's statement. That's the jury's prerogative. So you may not have known that he was going to answer that way, but we did go through that in the first trial. The judge went on to say that he believed his admonishment cured the problem. Yeah, I think that's on 17. Just to be clear, that was not in front of the jury. That was not in front of the jury? Correct. That was later. But he – the judge thought he gave a curative instruction in his reference, but thank you. That's very helpful. Well, it's for this Court to decide whether or not an instruction is sufficiently curative or not. It's not for the district court to say, oh, yes, my own instruction was sufficiently curative. But if – well, but if an – I think the law is probably the same in the Ninth Circuit. I know there are cases that hold it. If the judge does give a curative instruction, it's assumed the jury followed  So your point is he didn't give one. Correct. I thought her point was that the instruction is ambiguous when the judge says it's unfortunate that the witnesses – it's not the witness's position to stay if the witness is truthful. But the jury could read that to mean, like, it's unfortunate because really you should pay attention to what this witness is saying, which doesn't, to me, sound like a very curative instruction. Correct. So I guess let me clarify my point. If this was an instruction directed to the jury about this misconduct, it was not sufficient to cure for the points that we've gone through. So even if the district court thought it was curing it, it simply was insufficient. I'll move on to Agent Beals's improper vouching about repeatedly referring to the fact that a Federal judge had found probable cause to arrest. Agent Beals made this statement, or an iteration of the statement, four separate times over the span of his direct and his redirect. It took place over two separate days of trial. Only one of those instances did the judge tell the jury to disregard what a Federal judge had found. And the problem with this is that although the fact that Holly had been arrested was in the record, this agent is repeatedly telling the jury that a Federal judge who looked at information that's not in front of you has found that there's probable cause to arrest Holly for lying on the arrest, on the ATF form. And that is the ultimate issue for the jury to decide. So even as a Whether there was probable cause? Pardon? The ultimate issue for the jury to decide is whether it's proven beyond a reasonable doubt. Right. And that was what we went into on our briefs, is that it's the same decision. There may be different standards. There may be a different quantum of proof they have to both reach. But it's the same ultimate decision. So maybe the judge just thought, oh, well, he probably lied on the ATF form. But that's still improper for the jury to know. The jury shouldn't know that a Federal judge, they don't know if it's the judge sitting in front of them or a different one, thinks that it's probable that Holly has lied on the ATF form. Because that's really a thumb on the scales here. In terms of all of the misconduct as a whole, this was really just a battle of the statements. This was whether or not the statements that Holly had given to the sheriffs and the ATF were true or whether what he was testifying to in court was true. We've had so many. Were there objections to the statements that a judge found probable cause? Two were objected to and two were not. But there was only the first objection. This is at ER 262. Defense counsel objected, but the district court just didn't respond. And the prosecutor instead said to the agent, just your own knowledge. The second one, which is at ER 20, which is the next day, defense counsel objected. The district court said twice, I'll instruct the jury to disregard. And then Agent Beals responded, you got it, judge, and then said, adding to the fact that we had an arrest warrant for the defendant lying on the form. So two objections, only one instruction to disregard, which was just ignored by Agent Beals. Getting back to the cumulative effect, a weak case that really comes down to the credibility of Holly. The jury spent two and a half days trying to go through and figure out whether or not Holly had lied on the ATF form. And as we pointed out, the government had already twice tried to convict Mr. Holly, and those had both resulted in mistrials. So we know that this wasn't an extremely strong case like the government's claiming, and the government claims it had these two confessions. But the whole issue in the case is whether or not those confessions were false or not. Couldn't the case reasonably be viewed as having gotten stronger at the last trial because they added a second question that was allegedly answered falsely, the marijuana question? No, because that was actually added after the first mistrial. The first mistrial.  And they still didn't get a conviction. So by the third time. So they believed Holly in the second trial for his explanation. He got on the stand, right? That was the third trial. That was the third trial. He got on the stand at all three trials, is that your Honor? Correct. And it just appears from the jury notes that they just couldn't. He testified at all three trials? Correct. I'll reserve the remainder of my time for rebuttal. All right. Good morning, Your Honors. May it please the Court. Mark Rahey for the United States. I will address basically the three separate claims of misconduct in the same order that my opponent did, unless this Court would have me proceed otherwise. Were you the trial attorney? No, I wasn't. Your Honor, the first claim of misconduct was about, that was addressed, was the single sentence in closing argument about the bad decision of the defendant costing two lives. And I think Judge Wolf had asked a question. One thing I want to point out at the beginning. Oftentimes, in felon and possession cases, or perhaps cases like this, there's something maybe very salacious or horrible that happened with the gun. And usually the parties agree to sanitize it, keep it out. It was always part of the defense strategy in this case to get that evidence in. The whole point about the two confessions, which were incredibly similar in detail, given 30 days apart to two separate law enforcement agencies, when the defendant took the stand, he has to explain that. The entire defense theory was that the inflammatory nature of the investigation surrounding this gun was why he had lied, why the jury should believe that he lied in those confessions, because he claimed that he was afraid he'd be pinned as an accessory. And he also claimed that the jury shouldn't believe that because his family didn't believe in guns, and he basically bought the gun that his own sister's boyfriend used to kill somebody and then take his own life. So just, I think, at the outset, it's important to know that this is a different kind of case. This was not a case where there were inlimited rulings like you can't, you know, mention this at all. Not only that, it was just pointed out the defendant took the stand all three trials. In this case, and I noticed this when I was preparing for the case, the argument today, the defendant himself made basically the exact same statement that the prosecutor did. And you'll find it at Supplemental Excerpt of Record 66. And the unfortunate thing is that is Record of Transcript 513. The next page isn't, for some reason, in the SERs, but I'm happy to provide that. And as an officer of court, I can convey what it says. And here's the statement that you do have most of it. It begins at the bottom of SER 66. I wish that I could change. I wish I could change the past. I wish that I didn't even buy it, because then both people would be able to be here at this time now. And I believe that was a tactical decision. This defendant wanted to basically gain some points with the jury that way, to say, hey, I'm not an irrational guy. But the point is, for whatever reason he said it, he definitely said it. And then his own lawyer, in closing argument, this is at Supplemental Excerpt of Record 195, even alluded to that, said he made a decision that he regrets. So in essence, all the prosecutor was doing was saying the exact same thing. There was never any dispute that this was a tragic result that came from this gun. And as we point out in our reply brief, this Court has said in the Lester case, that 749F2nd of 1301, appeals for the jury to act as a conscious of the community or not impermissible. And this Court has also held in Guam v. Ignacio in 852F2nd of page 462 that it is okay for the prosecutor to impress upon the jury the seriousness of the charges. That is what I believe a fair reading of this statement is. Counsel, I think you're going to get to the next, or at some point you're serious, you'll get to the element which is of more concern to me. So I'll just put it on the table now. My main concern is that it seems we've got a government witness testifying about the demeanor or truthfulness of Holly, who was gambling everything, I suppose, by taking the witness stand. And then the curative instruction, after the government witness says something about Holly's demeanor, the Court sustains the objection but says, quote, wait a minute, I want to get this straight, it is unfortunate, but it's not the witness's position to say if a statement is truthful. Why couldn't a jury naturally understand that to mean, like, it's unfortunate that I can't let this government witness say Holly's a liar? Why is that a curative instruction? And if this is such a close case that the jury rejected a couple of times or it was a mistrial, why shouldn't we reverse on that statement? For a number of reasons, Your Honor. First of all, I don't think that that sort of ambiguity negates the instruction at all, if you even consider. I mean, I think he's saying it's unfortunate because right away he says sustain, sustain. Wait a minute, I want to get this straight. I think the only reasonable inference of what he means by it's unfortunate is simply that it's unfortunate that this just happened, because now I have to tell the jury what their duty is. If that sentence ended there, maybe there would be some concern. But my opponent, you know, you've got to look at what comes next. Right after it's unfortunate, the judge says in clear terms it's not the witness's position to say if a statement is truthful or untruthful, period. That's the jury's decision. And in the very next paragraph, so I don't want anybody saying that somebody is a liar or untruthful or whatever, that's the jury's responsibility. But isn't the proper curative instruction in this type of situation is an instruction to the jury to disregard the testimony that they just heard? That could have been one option, Your Honor. That's typically what a district court will do as a curative instruction. They'll make it quite clear that the jury is to disregard that testimony. Well, elsewhere in the Court's instructions, in Supplemental Extract of Record 9, the Court said, You are instructed the jurors to disregard testimony to which objections are sustained. And this is the case. Where is that one? Where does that one appear? Is that part of the last instruction before the jury goes to deliberate? You know, I looked at it. Because it's in SER 9 and 9A, I'm thinking it might have been in the beginning, Your Honor. But I wouldn't be surprised. Sometimes the judges will do general instructions at the beginning and then again at the end. Right. So you're saying it might be in the general instructions at the beginning? I believe that's where it is. But isn't it most appropriate to do it right after the testimony that the jury is not supposed to consider? It would have been better. I'll say that, Your Honor. But I don't think that this single comment that was immediately objected to, the objection was immediately sustained, it was never mentioned again, it was never argued in closing, could be seen. And then you at least have an effort in a multi-paragraph curative effort. I don't see how that could be reasonably justified. You have a curative effort, but I mean, the problem that I have is simply that the It's unfortunate or ambiguous whether the judge is saying, it's unfortunate that the witness made that statement, or whether the judge is saying, it's unfortunate that we have this rule that you're not allowed to consider it. I'm not going to instruct you. Even if you assume the latter interpretation, Your Honor, I'd respectfully submit that's basically the judge just then complaining about the state of the law. There are plenty of aspects of a trial that are going to be, won't make sense to the average layperson juror, but they're instructed to follow the law. And the Supreme Court said in Richardson v. Marsh, we presume that jurors follow the law and that they do so very carefully. Did the judge at some point at the beginning or at the end or both instruct the jury that if he sustained an objection, they should disregard any answer that might have been given nevertheless? That's exactly what I referred to earlier. And the one that I have is Supplemental to Excerpt Record 9. I wouldn't be surprised if it was both before and at the end of the trial. But I just don't know off the top of my head. But again, you know, in a way, I mean, it's often said that a defendant is titled to a fair trial, not a perfect trial. In this case, the minute the objectionable testimony came in, an objection was made, it was sustained, and the judge admonished the prosecutor in front of the jury and told the jury in no uncertain terms, it's your job to decide who's being truthful or not. And I know my opponent brought up for the first time in the reply brief setting out all this evidence. I want to also, this Court, if there are any concerns about whether this was an ongoing pattern, I would simply say this. Even if the prosecutor asked problematic questions those first two trials, I think this record shows by this third one he had gotten the message. And why is it that I say that? In, I mean, this was Detective Conner's testimony. In Excerpt of Record 256, the page right before the objectionable answer, the district court says squarely, if it's demeanor or anything of this sort, he can testify as to what he observed. One of the very next questions of the prosecutor then is, okay, to Detective Palmer, were you able to observe the defendant while he made these responses? The answer is yes, he was right at the table with us. So, so far the prosecutor's doing exactly what the district court said he could do. And then the next question, all right, and how would you describe the defendant when he made these responses? Again, if you're talking about demeanor, if you say describe the defendant, that naturally and intuitively calls for answers that go to fiscal attributes. And earlier in this same third trial, when Detective O'Brien testified, the same pattern went, had, you know, proceeded, and there was no problem with the testimony that was elicited. In Excerpt of Record 179, the district court again, this time during Detective O'Brien's testimony, said actually all he can testify to is he can testify to a demeanor, he can testify to a change in demeanor, and you can ask what it is, but he can't give an opinion as to what it means, it's up to the jury. And then in the next few questions that came out, Detective O'Brien testified at Excerpt of Record 178, I did not observe any change in his demeanor, and at Excerpt of Record 179, he testified that Hawley remained very calm. That was earlier in this same trial. And then when you get to the Detective Palmer's testimony, our point is that this goes in the exact same way. Again, at Excerpt of Record 256, the district court says if it's demeanor, he can testify what he observed. The prosecutor asks, were you able to observe, and then describe. And then a sort of a nonresponsive answer comes where there's an objection and speculation. And this I also thought is interesting. Sometimes you live with a case and you look at it a week before. There's no pending question from the prosecutor. The very next comment is from the court. This is Excerpt of Record 257. It's also Excerpt of Record 255. There was a mistaken duplication, at least in the copy that I received. Okay. Yeah. After the court said, yeah, just what he observed is to his demeanor, without any further question from the prosecutor, the witness says, well, his demeanor changed. So far, so good. Then his demeanor changed from being truthful or being untruthful to truthful. So in a way, if you look at this, this wasn't even responsive to the prosecutor's question. It was an unfortunate incident. And at the sidebar a few minutes later, when the defense was moving to a sidebar, they even used the term that the witness was volunteering his opinion. So, you know, again, I can't the law is clear, you can't comment on this testimony. That's why we said it was erroneous testimony. But as far as this ominous spectacle or, you know, specter that somehow the prosecutor was leading all this up, I don't think the record supports it. If anything, the witness made the problematic comment after something that the judge said. And, again, you know, I'll move on to the next thing. Again, with that curative instruction, Judge Gould, I don't think at worst there's ambiguity about why it's unfortunate, but it couldn't be more clear as to what the job of the jury was as a result of that. And this comment never once argued during closing argument by the prosecutor. Now about the arrest warrant. And there's something I want to add. I take issue with the record. My opponent, I appreciate her advocacy, in all of her briefs and even just a few minutes ago, uses the phrase that the agent repeatedly referred to a federal judge finding probable cause. The words probable cause, I mean, unless I'm wrong, I made a good faith effort to read as closely as possible. That phrase is only said once. And that's at Excerpt of Record 262, and then the exchange continues to 263. What the prosecutor was saying was now Agent Beals, what was the reason, the basis for the arrest? The basis of the arrest was that the judge found probable cause, and then he's cut off. He doesn't even go on to say probable cause, that he was lying on this, that, and the other thing. He's cut off. And then objection comes, this is vouching, it's irrelevant. And if you have any lingering concerns that somehow the prosecutor was trying to get this in, what is the very next thing in the transcript? The prosecutor says, just your own knowledge of the evidence that led to the arrest, not anything else, Agent Beals. And then the next statement, there's not a problematic answer. Earlier, Excerpt of Record 261, and this is only two pages, I think two or three pages into the witness's testimony, he's basically warming up. The prosecutor wants to give a narrative of the timeline. Says, okay, and at that point, did the judge issue an arrest warrant? End of question. Yes, no objection to that. So there are objections to the judge finding probable cause, but again, that's only said once. The prosecutor immediately gets off of it. And then the last time, you know, as my opponent pointed out, a hundred pages in the transcript later, which I guess translated into the next day, at one point in his answer, Beals is saying, in addition to knowing that if the ---- What page is that? That, I'm sorry, Your Honor, Excerpt of Record 299. It says, in addition to knowing that a Federal judge had already found Python, doesn't finish that sentence. Ms. Castillo, objection vouching, the Court, yes, sustained, disregard what a Federal judge found. The witness says, yes, Your Honor, and again, the Court says, I ask the Court to disregard that. And again, Your Honor, when you look at the context of a multi-day trial, none of this was argued by the prosecutor in closing either. So I don't think it's a fair inference from the record. Maybe he shouldn't have gone to this topic at all. But he did in passing as part of the background. And the term probable cause, again, I'd be happy to hear from my opponent otherwise if I'm misreading the record. I only see that one part of the record, and that's the Excerpt of Record 262 to 263. And I guess just a, you know, a little conclusion here. When taken as a whole, I don't believe any one of these individual errors warrants reversal. Their cumulative strength doesn't as well. This may have been a close case, but to call the government's evidence weak when we had two separate confessions to two separate agencies 30 days apart, I don't think it's a fair reading of the trial. And as far as the record, and I understand there were two missed trials, but we can't read anything into that. There was never any notes that said or, you know, anything in the record where the jurors even indicated their numerical split or why they missed trial. We have missed trials in the Southern District where it's 11 to 1, and sometimes somebody just doesn't even want to deliver. Did the jury, was the verdict form separated out as to on materiality to the lawfulness of the sale? Were the two questions separated out in the jury form? The two forms of liability were, yes, Your Honor. Okay. So my law clerk told me that yesterday Congress passed a bill, or the Senate Judiciary Committee approved a bill that would make it a feral crime to knowingly purchase any firearm for or on behalf of or with intent to transfer it to any other person or to So doesn't that undermine the materiality as to the stop person in this case? You know, I think I saw the headline. Without knowing the exact text of that statute, I don't think so, Your Honor. Well, but your position is that not being the actual purchaser is always material to the lawfulness of the sale under this, I guess, I'm not quite sure what this act is, under the state statute. Yeah, 92286. Right, right. So that's your position, right? It is, and that's based on the legislative. Well, if that's true, why would Congress have to pass another specific statute on the same point? Well, you know, again, Your Honor, without having read it, you know, sometimes things It may be to put us out of our misery, since there's now a split in the circuits. You've got Polk in the Fifth Circuit, Frazier in the Eleventh, Abramski in the Fourth. And I think that analytically, this is a little complicated. It's your position that it's always – well, let me ask you this. Is materiality a question for the jury? Yes. And I think I know where you're going. My position, and I've taken it from the legislative history, is that it's always material, but it would be 100 percent error for a court to instruct, to direct a verdict to the jury. No. Well, so it's a factual issue, and the Ninth Circuit treats it as a factual issue. Some of these precedents say it's always material, but it's a factual issue. The jury, there would have to be evidence. And I'm concerned in this case that the judge, as far as I can see, did not instruct on 922b-5 or any of the law that – but the agent was allowed to testify to some of it. If you answer any of these questions, no, they can't sell you a gun. But since we're on this, the – and defense counsel, hopefully, will have a chance to answer this, too. The – it does – it is unlawful under the statute, 922d-3, for somebody to buy or for a firearm to be sold to anyone who unlawfully uses a controlled substance. And I believe there was testimony at this third trial that the defendants had been using a controlled – had been using marijuana around the time he bought the gun. It's an ER-218-20. Is that the government's position? And so even putting aside whether it's lawful, you know, whether the ultimate recipient has to be prohibited, since they did have two questions on a special verdict form and they answered both, they found them guilty on both, this would be sufficient. But is there – did that – I haven't studied 218-220, even though it's just a few pages, and there may be more pages. There probably are more pages. But is that the government's position? If we really scrutinize the record, we'll see that there was evidence that he was using marijuana around the time he bought the gun and the jury would have a proper basis to disbelieve his testimony that he had stopped long ago. Absolutely, Your Honor. In fact, you know, the way I look at it, they never challenged the sufficiency of the evidence on that point. It was fiercely litigated below. I already used up all 14,000 words. It would – it makes for very compelling reading. It was fought. My take of it now is when we get to appeal and they don't challenge the sufficiency on that, that that's a given. And that is kind of why, you know – You're saying they're not challenging the sufficiency on that? On unlawful user, no. That's done because that should have been a claim on appeal. You know, and our whole point was it – So does that make this Frazier-Polk issue academic? You know, I love a good legal fight. That's why I spent maybe the five or six pages, but at page 40 of my brief, I do say – and I actually said it earlier – this Court doesn't even have to reach that issue if it doesn't want to. Because, you know, you have that special verdict where they found both theories. In Excerpt of Record 264, Agent Beals gave uncontroverted testimony that if you answer yes to the unlawful user of a controlled substance question, the gun dealer can't proceed, and he or she has to cancel the transaction at that point because the law states that those individuals can't possess that firearm. All right. Thank you, Counselor. Thank you. We're all over. Sorry. You had some time left anyway, didn't you? Maybe you didn't. I'll start with the materiality. We actually did challenge the – we challenged the materiality of both statements. That's on page 41 of our opening brief. So we've never conceded that issue at all. The testimony was that someone who was – that the gun store wouldn't sell to someone who was visibly high in front of them, and that an unlawful user could not possess a gun. But there wasn't – there wasn't testimony about purchasing a gun if it's an unlawful user. Well, there should have been testimony. Shouldn't the judge have been instructing on the law? Your Honor is correct. There was no instruction on the law on that point either. But as far as I could tell, the defendant didn't request – did he? No. The defendant was requesting instructions on materiality and what that – and the definition of an unlawful user. And so those instructions were given. But the specific law about the type of person that was prohibited from purchasing a firearm, no. That wasn't in there. Because it says it shall be unlawful for any person to sell a firearm to an unlawful user of a controlled substance. That's D3. And then was there testimony that Mr. Hawley was using marijuana around the time that he used – that he bought the firearm? There was, yes. His various neighbors testified about his marijuana smoking habits. And so is it – so do you challenge the sufficiency of that evidence on a Rule 29 standard? We don't challenge the evidence that he was an unlawful user, but we challenge the evidence of materiality. But why couldn't a jury reasonably find – because the judge did instruct on materiality. It was the jury – That it was capable of influencing, correct. Right. But so it was a jury question. He didn't take that away from the jury. So why could the – why would it be impermissible for a jury to find that that issue – you know, the answer to that question could tend to influence whether somebody would sell you a gun or not. Well, we've argued that that's because the jury was never told that an unlawful user couldn't legally purchase a gun. And so without knowing that it was unlawful for that person to purchase, there just wasn't sufficient evidence for them to make the link. The agent that testified – About possessing. About – I'm sorry. He said an unlawful user could not possess a firearm. But the agent actually didn't testify that an unlawful user could not purchase a firearm. All right. Are there further questions about the – No, I think we're done. Okay. All right. Thank you very much. No questions. United States v. Holley will be submitted.
judges: Wolf, Wardlaw, Gould